UNITED STATES of America,
Plaintiff–Appellee,

v.

Cortez C. GUYTON, Defendant–
Appellant.

No. 93–3420.

United States Court of Appeals,
Seventh Circuit.

Argued May 9, 1994.

Decided Sept. 26, 1994.

Randy G. Massey, Thomas Leggans (argued), Office of the U.S. Atty., Criminal Div., Fairview Heights, IL, for plaintiff-appellee.

William D. Stiehl, Jr. (argued), Wimmer, Stiehl & Montalvo, Belleville, IL, for defendant-appellant.

Before MESKILL *, FLAUM, and MANION, Circuit Judges.

MANION, Circuit Judge.

A jury convicted Cortez C. Guyton on one count of conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Following sentencing, the district court sentenced Guyton to life imprisonment. In his appeal, Guyton claims reversible error based on the district court's various evidentiary rulings, as well as on matters stemming from its instruction of the jury. He also challenges the district court's calculation of his base offense level which the court then used in arriving at its imposition of a life sentence under the Guidelines. We find no reversible trial error and therefore affirm Guyton's conspiracy conviction. However, we conclude that the district court made two errors in calculating Guyton's base offense level. For the following reasons, we vacate Guyton's sentence and remand to the district court for resentencing.

I.

In July and September of 1992, undercover law enforcement agents with the HUD task

* Hon. Thomas J. Meskill, of the Second Circuit, is sitting by designation.

force were involved in an effort to stem the sales of crack cocaine in and around the Orr Weathers and John DeShields housing projects located in East St. Louis, Illinois. Having made a dent in the sales of the street-level dealers, the task force set out to target the supply side of the equation. This led to the arrest and, eventually, the indictment of Guyton, along with five other named defendants, Brian Calhoun, Rodney Morris, Malik Garrett, Abdul L. Garrett and Ocie Hamilton, for conspiring to distribute crack cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Guyton's codefendants pleaded guilty; Guyton, however, pleaded not guilty and proceeded to trial on July 12, 1993.

The government's case against Guyton was, for the most part, fairly unremarkable. Guyton's codefendants, pursuant to their plea agreements with the government, testified to their roles in the conspiracy. Morris testified how Guyton approached him about the possibility of selling crack. Morris eventually agreed to do so. Morris testified how Guyton fronted him crack cocaine in amounts ranging from three-sixteenths to six-sixteenths of an ounce. Morris' brother Brian Calhoun testified that Guyton would front him various amounts of crack cocaine for which he would reimburse Guyton from subsequent resales. Two of Calhoun's purchasers were Abdul and Malik Garrett. The Garrett brothers testified how they pooled their money together to purchase crack from Calhoun, which they then resold to Ocie Hamilton. Two of the task force agents testified that during the course of their undercover purchases, their sellers referred to Guyton as their source of crack cocaine. One of Guyton's distributors, Germayne Farrell, who was not named in this indictment, testified how Guyton provided him with crack cocaine and cocaine powder on a front basis. Farrell testified how Guyton had told him that he intended to take over the crack cocaine trade in East St. Louis.

Apart from some evidentiary disputes (which Guyton renews on appeal) the only mishap at trial revolves around the district court's instructions to the jury. For some reason, the district court failed to read the conspiracy instruction to the jury. Surprisingly, nobody caught this omission. Instead, the jury discovered what the judge and both attorneys had overlooked. After having deliberated for more than four hours, the jury sent a note to the district judge requesting an instruction on the elements of conspiracy or, in the alternative, a dictionary. At that point, the district judge realized his mistake and reconvened the attorneys to discuss the best way to handle the jury's request. Guyton's attorney moved for a mistrial which was denied. The district court recalled the jury into open court and read them the omitted conspiracy instruction. The court said nothing else to the jury before returning them to their deliberations. Shortly thereafter, the jury returned a guilty verdict against Guyton.

At sentencing, the district court determined that Guyton, through the acts of his coconspirators, was responsible for the distribution of over five kilograms of crack. Under U.S.S.G. § 2D1.1(c)(2), this gave Guyton a base offense level of 40. The court next found that because some of the drugs in the conspiracy had been distributed within 1000 feet of a public school, Guyton's base offense level should be enhanced one additional point pursuant to U.S.S.G. § 2D1.2(a)(2). The court also found that Guyton possessed two firearms during the course of the conspiracy, which qualified him for an additional two-point increase under U.S.S.G. § 2D1.1(b)(1). Finally, the district court determined that Guyton was the organizer or leader of this conspiracy for purposes of the four-point upward adjustment of U.S.S.G. § 3B1.1(a). As a result, the district court calculated Guyton's base offense level at 47. This, in conjunction with Guyton's Criminal History Category of II, resulted in the district court's imposition of a life sentence under the Guidelines.

## II.

### A. Evidentiary Rulings

#### 1. Coconspirator statements under Fed. R.Evid. 801(d)(2)(E).

Guyton challenges the district court's decision to admit two hearsay statements under Rule 801(d)(2)(E). The first challenged

hearsay statement came from the testimony of Wilmetta Phinnessee. Phinnessee had previously pleaded guilty to her involvement in an unrelated drug conspiracy and, as part of her agreement, agreed to testify on behalf of the government at Guyton's trial. At Guyton's trial, Phinnessee testified, over Guyton's hearsay objection, that Morris and Calhoun had told her on different occasions that they obtained their cocaine from Guyton.

The other challenged statement came from the testimony of Brian Latham, a special agent of the Illinois State Police who was working undercover for the HUD task force. Latham was working undercover in the housing projects in East St. Louis. While there, he met Phinnessee, who agreed to cooperate with Latham's investigation and arrange for Latham to make a controlled buy from Guyton. Pursuant to their arrangement, Latham came to Phinnessee's apartment where he was later joined by Morris. Morris and Phinnessee engaged in a brief conversation after which Morris left. When the government asked Latham to state what Phinnessee had told him after Morris left the apartment, Guyton's trial counsel raised a hearsay objection which was initially sustained by the district court. In response, the government argued that Phinnessee's statement was admissible because it was the statement of a coconspirator in furtherance of the conspiracy. The district court accepted this characterization and overruled its previous ruling. Following this, Latham testified that Phinnessee told him that Morris had informed her that Guyton was currently out of cocaine and was waiting on his own supplier to furnish him with more.

■ Guyton claims that both of the challenged statements were inadmissible as coconspirator statements because they did not meet the requirements of Rule 801(d)(2)(E). That rule provides that a " 'statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy.' " *United States v. Perez,* 28 F.3d 673, 677 (7th Cir.1994) (quoting Fed.R.Evid. 801(d)(2)(E)). Guyton urges us to reverse the district court for failing to enter a specific finding that the challenged statements were made "in furtherance" of the conspiracy as required under Rule 801(d)(2)(E). However, as this court has previously stated, a district court's failure to make such a specific finding is at most harmless error. *See United States v. Serola,* 767 F.2d 364, 372 (7th Cir.1985). It is enough if the requirements of Rule 801(d)(2)(E) are supported by the trial record. *See United States v. Nicosia,* 638 F.2d 970, 973–4 (7th Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). And in reviewing the record, we are mindful that the district court's decision to admit statements under Rule 801(d)(2)(E) will be affirmed absent clear error. *See United States v. Ford,* 21 F.3d 759, 763 (7th Cir.1994).

■ We turn first to Latham's testimony. Latham's testimony actually contains three out-of-court statements: (1) Guyton's statements to Morris that he was currently out of cocaine; (2) Morris' statements relating this fact to Phinnessee; and (3) Phinnessee's statements to Latham telling him what she had just been told by Morris. But a closer examination of each of these out-of-court statements reveals none are *hearsay.* Guyton's own out-of-court statements are admissions of a party opponent under Rule 801(d)(2)(A), and are not hearsay at all. *See United States v. Hubbard,* 22 F.3d 1410, 1417 (7th Cir.1994). The second out-of-court statement, what Morris told Phinnessee, is not hearsay either. Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted.*" Fed.R.Evid. 801(c) (emphasis added). The government in this case had no interest in proving that Guyton was out of cocaine. Rather, the statement was offered as evidence of the conspiracy and who was involved in it. Therefore, because Morris's statement to Phinnessee was not offered for its truthfulness, it was not hearsay. Likewise, the last out-of-court statement, what Phinnessee told Latham, was not hearsay as it was not offered to prove the truth of the matter. As a result, Latham's testimony was admissible

without regard to satisfying the requirements of Rule 801(d)(2)(E).

■ We cannot say the same about Phinnessee's testimony, however. Phinnessee's testimony contained the out-of-court statements by Morris and Calhoun that they obtained their drugs from Guyton. The government offered these statements to prove the truth of the matters asserted, which makes these statements hearsay within the meaning of Rule 801(c). As a result, we must determine if these statements were admissible as non-hearsay pursuant to Rule 801(d)(2)(E).

Having said this, however, we have no difficulty finding sufficient support in the trial record for the district court's determination that these statements were made in furtherance of the Guyton conspiracy. Statements made to recruit potential conspirators are statements made in furtherance of a conspiracy. *See United States v. Herrero,* 893 F.2d 1512, 1527 (7th Cir.), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990); *accord United States v. Shoffner,* 826 F.2d 619, 628 (7th Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987). We think that Morris' and Calhoun's statements revealing Guyton as their supplier can be interpreted as attempts to recruit Phinnessee into the Guyton conspiracy. The context in which these statements were made is key. *See Herrero,* 893 F.2d at 1528. Morris and Calhoun made these statements to Phinnessee while selling her resale quantities of drugs which she intended to, and did in fact, sell in the John Robinson Homes in East St. Louis. It is plausible that Morris and Calhoun, after seeing Phinnessee's well-established customer base, could have revealed their supplier to Phinnessee in an attempt to familiarize her with the other members of the Guyton conspiracy, with the expectation that she could eventually be induced to join it. This may not have been the exclusive, or even the primary, basis for making these statements. But such is not the standard; rather, the question is whether there exists some reasonable basis for making the statement. *Garlington v. O'Leary,* 879 F.2d 277, 284 (7th Cir.1989); *Shoffner,* 826 F.2d at 628. We conclude that there is.

Our conclusion is supported by this court's decision in *Herrero,* where we addressed a challenge to the admissibility of similar statements. There, a drug kingpin told his girlfriend, who later joined the conspiracy, that the defendant was one of the kingpin's drug suppliers. The government presented this declaration through the girlfriend's trial testimony. After examining the statement in the context of the evolving relationship between the kingpin and his girlfriend, we concluded that this statement could "be seen as a 'statement[ ] made to recruit [a] potential coconspirator[ ]', through familiarization with the various members of the conspiracy, and, thus, as 'part of the information flow between conspirators intended to help each perform his role.'" *Herrero,* 893 F.2d at 1528 (quoting *Garlington,* 879 F.2d at 283). Thus, given the holding in *Herrero,* in conjunction with the lowered burden of proof that the government has in establishing the admissibility of these statements, as well as our deferential standard in reviewing such matters, *see Shoffner,* 826 F.2d at 628, we conclude that the district court's decision to admit Morris' and Calhoun's out-of-court declarations as statements made in furtherance of a conspiracy cannot be characterized as clearly erroneous.

### 2. Admission of testimony concerning firearms.

■ During its case-in-chief, the government offered the testimony of Rodney Morris who testified how on one occasion Guyton confronted him about an outstanding drug debt while wearing a bullet-proof vest and carrying a Glock .40 caliber handgun and a Mossburg pump shotgun. Before Morris' testimony, Guyton's trial counsel requested a sidebar conference with the district judge at which time he orally made a motion *in limine* to exclude any portions of Morris' testimony regarding the guns. The district judge denied Guyton's motion *in limine,* and Morris' testimony was allowed into evidence.

On appeal, Guyton claims that the district court should have excluded the portions of Morris' testimony concerning the weapons. He maintains that since he was not charged with a firearms offense, the admission of this

testimony was irrelevant in establishing his conviction for conspiracy. As such, Guyton claims that under Fed.R.Evid. 403 the probative value of this testimony was substantially outweighed by its highly prejudicial effect upon the jury. The government counters that Morris' testimony served to illustrate the relationship between him and Guyton within the conspiracy. The government also contends, based upon our decision in *United States v. Alvarez,* 860 F.2d 801 (7th Cir. 1988), *cert. denied,* 490 U.S. 1051, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989), that evidence of these weapons was relevant as "tools of the trade." We review the district court's ruling on Guyton's motion *in limine* under an abuse of discretion standard. *See Calusinski v. Kruger,* 24 F.3d 931, 934 (7th Cir. 1994); *accord Alvarez,* 860 F.2d at 829.

█ We need not pass on the district court's decision to admit this evidence. For one thing, Guyton, both in the district court and in this court, has done nothing more than merely assert "prejudice" as his basis for wanting this evidence excluded under Rule 403. This is not enough of a reason to exclude evidence under Rule 403 for "[i]t is axiomatic that all relevant evidence bearing on the guilt of the defendant is inherently prejudicial." *United States v. Jackson,* 886 F.2d 838, 847 (7th Cir.1989). Secondly, and most importantly, in light of the overwhelming evidence pointing to Guyton's guilt, we cannot say that Guyton would have been acquitted had the district court excluded this portion of Morris' testimony. Therefore, even if there was error, it was harmless.

### B. Omitted Jury Instruction

█ The pertinent facts surrounding this aspect of the trial have already been detailed earlier in this opinion. On appeal, Guyton maintains that the district court committed reversible error by calling the jury into open court and reading them the omitted instruction on conspiracy, without also reminding them of the government's duty to prove every element of the charge beyond a reasonable doubt. This, he alleges, overemphasized

the government's theory of the case and, as result, improperly influenced the jury to return a verdict in favor of the government.

At the outset, we note that the only objection Guyton's trial counsel raised was that reading the omitted instruction at this late stage of the game would unduly emphasize the government's case. There is nothing in the transcript indicating that Guyton's trial counsel requested the district court to remind the jury of the government's burden of proof and the presumption of innocence. In other words, Guyton did not bring to the district court's attention the specific errors he now complains of on appeal. Therefore, we will review his argument for plain error only. *See United States v. Davis,* 15 F.3d 1393, 1406–07 (7th Cir.1994), *petition for cert. filed,* (U.S. Jul. 20, 1994) (No. 94–5333). To constitute plain error under Fed.R.Crim.P. 52(b), " 'the error must have been prejudicial,' i.e., 'must have affected the outcome of the District Court proceedings.' " *Davis,* 15 F.3d at 1408 (quoting *United States v. Olano,* — U.S. ——, ——, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993) (emphasis omitted). "[U]nder Rule 52(b), '[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.' " *Id.* (emphasis omitted).

Guyton has not demonstrated how the district court's failure to reinstruct the jury on the government's burden of proof or the presumption of innocence constituted reversible error in this case. Nowhere in his brief or at oral argument did Guyton explain the prejudice he suffered by not having these reminders given to the jury. In fact, at oral argument Guyton's counsel stated that his position was that "it's hard really to depict, looking at the record, at the printed word, it's hard to depict the prejudice that results when the jury is brought back into the courtroom, they're read one, single instruction and then sent back into the jury room to deliberate again." [1] Yet it was Guyton's burden, under Rule 52(b), to demonstrate just that. He has not done so. If he, as the party claiming error on the part of the district

---

1. Guyton made the same concession at the hearing before the district court on his motion for a

new trial under Fed.R.Crim.P. 33.

court, does not meet his burden in articulating the harm, then under Rule 52(b), we cannot do it for him.

Even so, we are of the opinion that based on our decision in *United States v. Franco*, 874 F.2d 1136 (7th Cir.1989), such a claim of error would nevertheless fail. There, the district court responded to a request from a deliberating jury by giving them a supplemental instruction in open court. One of the defendant's objections was that in giving the supplemental charge without also restating the government's burden of proof and the presumption of innocence, the district court left the jury with an unbalanced set of instructions. We rejected this contention. After noting that the jury had already been instructed on these matters, we stated that "[a] court is not obligated to reinstruct the jury on the burden of proof or presumption of innocence if the instructions as a whole provide a careful explanation of those points of law." *Franco*, 874 F.2d at 1143. Such is the case here. Guyton makes no claim that the district court did not instruct the jury on the government's burden of proof and the presumption of innocence. Under *Franco*, the district court's failure to remind the jury on these matters did not constitute reversible error.[2]

## C. Sentencing

At sentencing, the district court calculated Guyton's base offense level at 47. Although Guyton received a one-point increase under U.S.S.G. § 2D1.2(a)(2) for distributing drugs within 1,000 feet of a school, and another two-point increase under U.S.S.G. § 2D1.1(b)(1) for using firearms during the offense (neither of which Guyton challenges in his appeal), there were two steps in the district court's calculations that were key in pushing Guyton's offense over 43 thus qualifying him for a life sentence under the Guidelines: (1) the court's determination that Guy-

ton was involved in the distribution of over 5 kilograms of cocaine base, which, under U.S.S.G. § 2D1.1(c)(3), set Guyton's initial base offense level at 40; and (2) the court's determination that Guyton was an organizer or leader of the conspiracy, which, pursuant to U.S.S.G. § 3B1.1(a), added an additional four-point enhancement. Guyton challenges both of these enhancements in seeking a reversal of the district court's imposition of a life sentence under the Guidelines. We shall address each of these in reverse order below.

### 1. Organizer or leader under § 3B1.1(a).

■ The district court adjusted Guyton's base offense level upward four points based on its determination that Guyton was an organizer or leader of the conspiracy. The district court gave the following reasons for its determination:

> The Guidelines say that we have to look at the defendant's role in the offense. Well, what was Mr. Guyton's role in this conspiracy? If you listen to all their testimony, and you observe them, and you hear what they had to say about the defendant, and not only that, but you just observe themselves [sic], it's apparent to me that of the people in the conspiracy, Mr. Guyton was the head man, the organizer or leader of this group.... [G]iven the fact that we have got a conspiracy, I think that we, as a practical matter, we have got to have somebody who is in charge of it or the head man or organizer of it or leader of it. Mr. Guyton fits that. That gives us another four points.

Guyton claims that there was no evidence supporting the district court's determination that he was an organizer or leader of the conspiracy. He acknowledges that a district court's determination that a defendant was an organizer or leader under § 3B1.1(a) is a factual one to which we will defer unless

2.  Guyton also challenges the district court's decision to give to the jury a joint venture instruction tendered by the government. To the extent that Guyton is complaining that this instruction cannot serve as a substitute for the omitted conspiracy instruction, we would agree. But we cannot agree with Guyton that this instruction had a prejudicial impact on the jury's verdict. The jury was given this instruction before they retired to

deliberate, yet they did not return a verdict until they were instructed on the elements of conspiracy. It stands to reason then that the jury did not base its verdict on a joint venture theory of liability. In other words, Guyton suffered no harm as a result of this instruction, which means that he cannot point to any error in giving it. *See Calusinski*, 24 F.3d at 935.

clearly erroneous. *See United States v. Goines*, 988 F.2d 750, 777 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). Nevertheless, Guyton maintains that the district court's determination that he qualified for an enhancement under § 3B1.1(a) is not supported by the record. He claims that the evidence in this case merely demonstrated that he supplied drugs to other members of the conspiracy. This, he insists, cannot support a determination that he exercised control over the other members of the conspiracy for purposes of the four-point enhancement under § 3B1.1(a).

■■■ Section 3B1.1(a) of the Sentencing Guidelines provides for a four-point increase in the defendant's base offense level if he was " 'an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.' " *United States v. Carson*, 9 F.3d 576, 584 (7th Cir.1993) (quoting U.S.S.G. § 3B1.1(a)). To qualify as an organizer or leader under § 3B1.1(a), the defendant "must have some control, direct or indirect, over at least four other participants in the offense." *Carson*, 9 F.3d at 584; *accord United States v. Schweihs*, 971 F.2d 1302, 1318 (7th Cir.1992); *United States v. McGuire*, 957 F.2d 310, 317 n. 4 (7th Cir. 1992). Organizing or enlisting others for the purpose of executing the crime can constitute sufficient control of another under § 3B1.1(a). *See Carson*, 9 F.3d at 585. But regardless of how control is demonstrated, it must be exercised over *four other members of the conspiracy* before a defendant may qualify for an enhancement under § 3B1.1(a). *Carson*, 9 F.3d at 584; *accord Schweihs*, 971 F.2d at 1318.

Here the sentencing record demonstrates that Guyton exercised control over only two other members of the conspiracy. There is no question that Guyton enlisted both Morris and Calhoun in his efforts to distribute crack cocaine, which is enough to demonstrate that he controlled them for purposes of § 3B1.1(a). But we have found no evidence in the record before us, nor has the government directed us to any, that would allow us to agree with the district court that Guyton exercised control over two additional members of the conspiracy. For instance, there is no evidence suggesting that Guyton controlled the Garretts in this conspiracy. On the contrary, evidence shows that the Garretts dealt only with Brian Calhoun and had no contact whatsoever with Guyton. Nor is there any indication that Guyton exercised any control whatsoever over the efforts of Ocie Hamilton, the remaining named member of this conspiracy. Thus, if there were others, it is not evident from the sentencing record.

The government urges us to uphold the district court's determination based on the fact that Guyton fronted drugs to at least four members of the conspiracy. This, according to the government, would demonstrate sufficient control for purposes of § 3B1.1(a). We have already considered and rejected this very argument in *United States v. Brown*, 944 F.2d 1377 (7th Cir.1991). We acknowledged in *Brown* that a seller's front arrangements with his customers could very well give him an incentive to exercise considerable control over their activities. *Id.* at 1385–86. But we stated that without evidence of *actual* control, evidence of a front arrangement was by itself insufficient to demonstrate the level of control necessary to support a determination that a defendant played a leadership role in the offense. *See id.* at 1386. The government in this case cannot point to any additional evidence beyond the front arrangements which would demonstrate that Guyton exercised control over four members of the conspiracy. Therefore, we reject the government's attempt to uphold the district court's determination under § 3B1.1(a).

This is not to say that the district court on remand cannot enhance Guyton's base offense level by *any* amount for the role he played in this conspiracy. The district court could, for example, enhance Guyton's offense level by two levels based on the control he exercised over Morris and Calhoun. *See Schweihs*, 971 F.2d at 1318 n. 6. Or the district court could find that Guyton, because of the control he exercised over these two coconspirators, in conjunction with a finding that the conspiracy either involved five or more participants or was otherwise exten-

sive, qualifies as a "manager" under § 3B1.1(b) and thus could receive the three-level enhancement under that section. *See, e.g., McGuire*, 957 F.2d at 316 ("The plain language of § 3B1.1(b) requires only that a defendant was a manager '*and* the criminal activity involved five or more participants'—not that a defendant managed, or controlled, the five or more participants.") (quoting U.S.S.G. § 3B1.1(b)) (emphasis in original). We, however, will not resentence Guyton. This is for the district court, which "is the situationally better suited and the institutionally more appropriate forum." *United States v. Hatchett*, 31 F.3d 1411, 1427 (7th Cir.1994) (Flaum, J., dissenting). Thus, we vacate this portion of Guyton's sentence and remand to the district court to resentence Guyton based on his role in this offense.

### 2. Calculation of drug quantities.

 Even without the four-point enhancement, Guyton has still not demonstrated that his sentence should be reversed. This is because his base offense level is still at a 43, which is the minimum offense level necessary to qualify him for a life sentence under the Guidelines. In attempting to get his offense level below 43, Guyton argues that the evidence does not support the district court's determination that he was responsible for distributing over five kilograms of cocaine base. He maintains that the evidence instead demonstrates that he was only involved in the distribution of between one and a half and five kilograms of cocaine base which, according to U.S.S.G. § 2D1.1(c)(3), would have resulted in a starting base offense level of 38. This, in combination with the other enhancements and his Criminal History Category, would have resulted in a total base offense level of 41, which, in turn, would have resulted in a reduced sentencing range of between 360 months to life. The district court's calculation of the quantity of drugs is a factual determination which will be affirmed absent clear error. *See United States v. Huels*, 31 F.3d 476, 481 (7th Cir. 1994); *accord United States v. Durman*, 30 F.3d 803, 812 (7th Cir.1994). The sentencing court "must make a specific finding of the relevant quantity of drugs, *supported by the evidence*, before setting the base offense lev-

el." *United States v. Montgomery*, 990 F.2d 266, 269 (7th Cir.1993) (emphasis added).

At the sentencing hearing, the district court specifically found that Guyton was responsible for distributing nine kilograms of cocaine base. Once again, however, the record in this case simply does not support the district court's determination. The testimony at trial and at sentencing demonstrates that Guyton was involved in the distribution of both cocaine powder and cocaine base (crack cocaine). Even taking the evidence in the light most favorable to the government, we were only able to come up with two kilograms of crack; the other seven kilograms were cocaine powder. It may be that the district court treated the two substances the same in arriving at its calculation of nine kilograms of crack cocaine. But the two substances are not treated the same under the Guidelines. As indicated in the Drug Quantity Table in § 2D1.1(c), the Guidelines draw a distinction between those offenses involving cocaine powder and those involving crack cocaine, equating 1 gram of crack cocaine to 100 grams of cocaine powder for purposes of calculating a defendant's base offense level. To the extent, then, that the district court treated these two substances the same in calculating the amount of crack cocaine involved in the Guyton conspiracy, this was clearly inappropriate. Because we cannot determine any other way that the district court arrived at its calculations of nine kilograms of crack, we vacate this portion of the district court's sentence and remand to district court to recalculate Guyton's base offense level under § 2D1.1(c). In so doing, the district court should make clear on the record whether it is relying upon cocaine powder or cocaine base in determining the amount of drugs that were involved in the conspiracy.

### III.

We AFFIRM Guyton's conspiracy conviction. We VACATE Guyton's sentence and REMAND to the district court for resentencing.