UNITED STATES of America,
Plaintiff–Appellee,

v.

Nicole DAVIS and Calvin Kuykendoll,
Defendants–Appellants.

No. 02–2979, 02–4134.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 2004.

Decided June 4, 2004.

Daniel Collins, Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

John M. Beal, Gary W. Adair, Chicago, IL, for Defendant–Appellant.

Before EASTERBROOK, KANNE, and WILLIAMS, Circuit Judges.

## ORDER

Nicole Davis and her husband, Calvin Kuykendoll, were indicted by a federal grand jury for conspiracy to possess with intent to distribute cocaine and heroin. Davis was also indicted for attempting to possess with intent to distribute the same. On the first day of their joint trial, Kuykendoll moved to sever the trials and the district court granted the motion. Davis was tried first. Separate juries found both Davis and Kuykendoll guilty as charged. Davis, an African–American, appeals her conviction and sentence, alleging selective prosecution on account of her race. Kuykendoll appeals his conviction claiming that the admission of excerpts of Davis's trial testimony into evidence at his subsequent trial violated his rights under the Confrontation Clause and the Federal Rules of Evidence. Davis's and Kuykendoll's appeals were consolidated. For the reasons stated below, we affirm both defendants' convictions and dismiss Davis's appeal of her sentence for lack of appellate jurisdiction.

## I. Background

Federal law enforcement officers arrested Benjamin Haro in September of 1999 for conspiracy to sell numerous kilograms of cocaine. In exchange for a reduction in his sentence, he cooperated with the government, providing the names of his suppliers and his larger customers, including Davis and Kuykendoll. Haro testified that he had met face-to-face and spoke on the telephone with both defendants and had supplied them with multiple kilograms of cocaine from February to May 1999. Haro also testified that during the course of these drug transactions, he knew Davis as "Coco" and Kuykendoll as "Derrick."

With this background, Haro, under the supervision of the Drug Enforcement Agency (DEA), arranged a drug deal with Davis. On November 22, 1999, Haro telephoned Davis's pager and a man returned the call about an hour later. Haro asked the man on the phone if he was "Coco's husband" to which he replied that he was. Speaking in code, they then discussed what kind of drugs Haro had available for sale, which included heroin and cocaine. During the conversation, the man said his wife just walked in the door. He then handed the phone to his wife, whom Haro knew was Davis. Davis then assured Haro that she would have the cash available to purchase the drugs. Four days later, Davis and Haro spoke again and Davis agreed to purchase between 40 and 50 kilograms of cocaine. On November 29, 1999, Haro spoke with Davis's husband to arrange the purchase of heroin. During the conversation, the husband handed the phone to Davis to work out the details of the deal, which included keeping the money in separate bags, as Haro told Davis that the heroin was coming from a different supplier than that of the cocaine. Haro and Davis arranged to complete the transaction at the "Rock 'n Roll" McDonald's in Chicago. That evening, Davis arrived at the appointed time in the car she had described to Haro in their phone conversation and told the undercover agent posing as Haro's cousin (whom Haro

had told Davis would be there to complete the deal on his behalf) that they should go somewhere else because there were people around the McDonald's parking lot. Davis was then arrested. Law enforcement recovered approximately $380,000 in cash from her car from two separate bags, one of which contained a scrap of paper inscribed with "Calvin, 250,000, June 6, 1999." Davis was charged with conspiring to purchase in excess of five kilograms of cocaine and more than one kilogram of heroin from Haro between February and June 1999, and with attempting to purchase the same controlled substances on November 29, 1999.

After Davis's arrest, agents proceeded to her home in Chicago where they performed a traffic stop of a car without license plates which police observed circling the block and driving by the residence slowly. Agents discovered Kuykendoll was the driver, although he denied knowing anyone who lived at Davis's address. In a superceding indictment, the government later charged Kuykendoll with one count of violating 21 U.S.C. § 846 and Davis with two counts of violating the same.

The defendants were initially to be tried together. However, when the district court learned that Davis's defense would be antagonistic to Kuykendoll, it granted the latter's motion for severance. Davis was tried first, found guilty as charged, and sentenced to 262 months of incarceration. At Kuykendoll's trial, Haro and two government agents identified Kuykendoll as Davis's co-conspirator. When Davis refused to testify at her husband's trial, the government sought to introduce into evidence trial excerpts of Davis's testimony from her trial which would positively identify Kuykendoll as the male voice speaking with Haro on the telephone setting up the November 29, 1999 drug transaction. The

court denied the government's request. The government then sought to read in a shorter, fourteen-line excerpt of Davis's trial testimony which establishes Davis's marriage to Kuykendoll and their common residence. Those passages were allowed. The jury eventually convicted Kuykendoll as charged.

## II. Davis

Davis argues that her equal protection rights were violated by the government's failure to investigate and charge Haro's suppliers or customers who were not African–American. Davis contends that the district court erred in rejecting her post-trial motion for a judgment of acquittal or a new trial, or, in the alternative, in refusing to depart downward in her sentence, both based on her selective prosecution claim.

■ We review the district court's denial of Davis's post-trial motions for acquittal or a new trial for abuse of discretion. *United States v. Souffront*, 338 F.3d 809, 819 (7th Cir.2003). In reviewing a motion for a new trial, we view "the evidence in the light most favorable to the prevailing party, we draw all reasonable inferences that can be drawn from the evidence and will not set aside the jury's verdict if there is a reasonable basis in the record which supports that verdict." *Id.* While the government alleges that Davis waived her selective prosecution argument when she did not raise it before trial, *United States v. Jarrett*, 705 F.2d 198, 204–05 (7th Cir. 1983), we find that "these issues have been preserved for appeal because the district court effectively 'waived' [Davis's] 'waiver' when it considered and made findings on these issues after trial." *United States v. Cyprian*, 23 F.3d 1189, 1195 (7th Cir.1994). The district court considered and rejected Davis's selective prosecution argument for failure to make out the claim. Therefore,

the district court's denial of her post-trial motion for acquittal or a new trial based on a claim of selective prosecution is reviewable on appeal.

To prevail on her selective prosecution claim, Davis must show that the government's prosecution had both a discriminatory purpose and effect. *United States v. Goulding,* 26 F.3d 656, 662 (7th Cir.1994). Additionally, she must overcome the presumption that the prosecution has not violated equal protection by showing "clear evidence to the contrary." *United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). Davis argues that Haro's targeting of Davis and her husband, both African–American, and not Haro's white and Hispanic drug suppliers, amounted to selective prosecution attributable to the government. Assuming *arguendo* that Haro harbored racial animus towards Davis and Kuykendoll (a contention which the record does not support), that racial animus cannot, without more, be imputed to the government. Davis must affirmatively show that the racially-motivated ill will, "whoever its bearer, actually motivated [her] prosecution." *United States v. Monsoor,* 77 F.3d 1031, 1035 (7th Cir.1996). Davis has made no such showing.

Similarly, Davis has made no showing of discriminatory effect. To establish a discriminatory effect in her case, she must show that similarly situated individuals of a different race were not prosecuted. *Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480. Although Davis argues that the government did not investigate and prosecute Haro's non-black, similarly situated suppliers and customers, the record refutes her contention. The record shows that the government did in fact prosecute one of Haro's suppliers who is Hispanic (and that Haro testified against him). The district court, therefore, did not abuse its discre-

tion in denying Davis's post-trial motion for a judgment of acquittal or for a new trial on the basis of Davis's selective prosecution claim.

As for Davis's appeal of the district court's decision to reject her motion for a downward departure based on her selective prosecution allegation, we are unable to review it. Davis appeals her sentence under 18 U.S.C. § 3742(a). However, this court has no jurisdiction to review a district court's decision not to depart downward unless the district court concluded erroneously that it lacked the authority to do so; in that case, we would have appellate jurisdiction to review that erroneous legal conclusion. *United States v. Bonsu,* 336 F.3d 582, 587 (7th Cir.2003). The district court judge in this case declined to depart downward not because he thought he lacked the authority to do so or similar legal error, but because he expressly found no showing of selective prosecution. The district court stated "there is no evidence in this record that would support any kind of contention that [Haro] targeted anybody or that the government targeted anybody because of their race. And so ... I'm not granting a departure on that basis." Decisions on whether or not to depart such as in this case "are left entirely to the discretion of the district court under the [Sentencing] Guidelines." *United States v. Crucean,* 241 F.3d 895, 898 (7th Cir.2001). Thus, we have no appellate jurisdiction to review the district court's refusal to depart downward.

### III. Kuykendoll

Kuykendoll makes two related arguments on appeal. He contends that the admission of an excerpt from Davis's trial testimony into evidence at his own trial violated his rights under the Confrontation Clause. He also argues the district court erred when it admitted the excerpt based

on its finding that the passage fell under the residual hearsay exception in Rule 807 of the Federal Rules of Evidence. We review the trial court's evidentiary findings for abuse of discretion, *United States v. Bradley*, 145 F.3d 889, 892 (7th Cir.1998), but review de novo any district court rulings that affect Kuykendoll's Sixth Amendment right to confront witnesses. *United States v. Castelan*, 219 F.3d 690, 694 (7th Cir.2000).

■ We find the district court did not abuse its discretion when it admitted the excerpted testimony in Kuykendoll's trial. Rule 807, which codifies the residual hearsay exception, allows for admission of out-of court statements which display "circumstantial guarantees of trustworthiness." Fed.R.Evid. 807. The district court admitted under Rule 807 fourteen lines of Davis's trial testimony pertaining to her address, marriage to, and cohabitation with Kuykendoll.[1] The district court deemed the following characteristics of the testimony as indicators of its trustworthiness: (1) the testimony was given under oath; (2) Davis lacked any real motivation to lie about the marriage or the address; and (3) cross-examination by Kuykendoll would not have enhanced the veracity of the admitted statements. The court was well within its discretion in admitting the testimony based on these findings.[2] Be-

cause we affirm the district court's admission of the Davis excerpt under Rule 807, we need not reach Kuykendoll's alternative argument that the Davis excerpts were not admissible under Rule 804(b)(3).

■ The district court also found that admission of the fourteen-line excerpt did not violate Kuykendoll's constitutional rights. Following the oral argument in this case, Kuykendoll and the government made a motion to cite supplemental authority-the recent Supreme Court decision, *Crawford v. Washington*, —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (U.S.2004). *Crawford* overrules *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), on which the government relied in its appellate brief. While *Crawford* holds that the Sixth Amendment bars the admission of testimonial evidence given by an unavailable witness when the defendant did not have a prior opportunity to cross-examine the testifying witness, that rule ultimately does not change the outcome of this case. The Chief Justice's remark in his concurring opinion guides us in our application of *Crawford* to the case at bar: "the mistaken application of [the Court's] new rule by courts which guess wrong as to the scope of the rule is subject to harmless-error analysis." —— U.S. at ——, 124 S.Ct. at 1378. Therefore, even if the Davis

---

1. The excerpt from Davis's trial which the district court admitted into evidence at Kuykendoll's trial consisted of the following: "On November 16th, 1999, Nicole Davis testified in court as follows:

QUESTION: Where do you live, Nicole?
ANSWER: 2321 North Rutherford; R-u-t-h-e-r-f-o-r-d.
QUESTION: And that's in Chicago, Illinois?
ANSWER: Yes, sir.
QUESTION: With whom do you live at that address, please?
ANSWER: I live with my husband, Calvin Kuykendoll, and my three children.
QUESTION: Nicole, will you—you told the ladies and gentlemen of—that you are living

on Rutherford with your husband and three children?
ANSWER: Yes, sir.
QUESTION: Were you living there in November of 1999?
ANSWER: Yes, sir."

2. We note that the district court rejected as unfair the more extensive testimony which the government sought to introduce (Davis identifying Kuykendoll as the male voice on the call with Haro), and instead allowed only Davis's testimony about her address, marital status, and cohabitation with Kuykendoll.

excerpt were "testimonial" evidence under *Crawford* and erroneously admitted because it was not subject to prior cross-examination by Kuykendoll, its admission was harmless as there were other evidentiary grounds (such as three testifying witnesses identifying the male voice in the call with Haro as Kuykendoll's) on which the jury could have issued its guilty verdict.[3]

We reach this harmless error conclusion under this circuit's case law as well. Harmless error analysis applies to violations of the Confrontation Clause. *Castelan*, 219 F.3d at 694. "[C]onstitutional error that is harmless will not cause an otherwise valid conviction to be set aside." *Ochoa*, 229 F.3d at 639–40. Harmless errors are those that "did not contribute to the verdict" beyond a reasonable doubt. *Id.* at 640. *See also United States v. Thompson*, 286 F.3d 950, 962 (7th Cir. 2002) (same). To determine whether a constitutional error can be regarded as harmless, we look to factors such as "(1) the importance of the witnesses's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) whether other evidence corroborated or contradicted the witness's material testimony; and (4) the overall strength of the prosecution's case." *Ochoa*, 229 F.3d at 640 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684,

106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). Here, the government presented three witnesses who each identified the male voice on the recorded telephone conversations with Haro as that of Kuykendoll. The government also introduced into evidence Davis's and Kuykendoll's marriage certificate. Therefore, to the extent that the admitted excerpt was important to the government's case, it was cumulative.

## IV. Conclusion

For the reasons discussed above, we AFFIRM the judgments of the district court, and DISMISS Davis's appeal of her sentence for lack of appellate jurisdiction.

---

**3.** We would reach the same result under th pre-*Crawford* analysis of the Confrontation Clause. Under that reasoning, evidence not falling within a "firmly rooted hearsay exception" is "presumptively unreliable." *Bradley*, 145 F.3d at 896. The evidence is therefore inadmissible absent "a showing of particularized guarantees of trustworthiness." *Id.* (citing *Idaho v. Wright*, 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). The trustworthiness of the challenged statement must be determined through an examination of the totality of the circumstances. *Id.* As Rule 807 is not a "firmly rooted" hearsay exception, *United States v. Ochoa*, 229 F.3d 631, 638 (7th Cir.2000), the district court's

admission of Davis's excerpted testimony under that rule is presumptively invalid. We look therefore to the totality of the circumstances surrounding the making of the out-of-court statement to evaluate Kuykendoll's constitutional claim. Davis's testimony was given under oath in the presence of a judge. As noted by the district court, Davis lacked any real motivation to give false answers to her own attorney's preliminary questions about her marriage to Kuykendoll and their residence at a given address. Any cross-examination by Kuykendoll would not have enhanced the veracity of these statements. Taken together, these characteristics amount to "particularized guarantees of trustworthiness."