2000 UT App 238

STATE of Utah, Plaintiff and Appellee,

v.

Kenneth J. WEBSTER, Defendant and Appellant.

No. 990764–CA.

Court of Appeals of Utah.

Aug. 9, 2001.

Kent R. Hart and Robert K. Heineman, Salt Lake City, for Appellant.

Mark L. Shurtleff and Kris C. Leonard, Salt Lake City, for Appellee.

Before BILLINGS, ORME, and THORNE, JJ.

## OPINION

ORME, Judge:

¶1 Defendant Kenneth J. Webster appeals his conviction of one count of wrongful appropriation of a motor vehicle. Specifically, he argues that out-of-court statements made by his wife, as well as his statement regarding a prior arrest for a similar offense, should not have been admitted at trial. He also challenges the trial court's determination that, under the statutory scheme in effect at the time, wrongful appropriation of a motor vehicle is a third degree felony. We clarify the law with respect to the appropriate classification of wrongful appropriation of a motor vehicle; we reverse Webster's conviction based on evidentiary errors; and we remand for a new trial.

## BACKGROUND

¶2 "We view the facts in the light most favorable to the jury verdict and recite them accordingly." *State v. Loose,* 2000 UT 11, ¶2, 994 P.2d 1237. Webster began work as a salesperson for Intermountain Volkswagen in June of 1998. Earlier that month, Intermountain had acquired a 1988 Nissan Stanza as a trade-in. The Nissan was kept with

other trade-ins in a fenced area at the back of Intermountain's lot. Salespersons were allowed to "test drive" other cars on the lot, but they were not allowed to drive the cars in the fenced area, although keys for these cars were kept in an accessible office in an unlocked box.

¶ 3 On July 6 or 7, 1998, Intermountain's lot coordinator saw Webster drive the Nissan from the lot but did not see Webster return with the car, and the lot coordinator did not see the car again on the lot before July 10. A day or two later, only two weeks after beginning work, Webster quit his job at Intermountain.

¶ 4 On July 10, 1998, an Intermountain manager drove to the apartment complex where Webster lived. The manager found the Nissan in a parking stall at the apartment complex and notified police. Detective Cupello arrived and verified that the car in the parking lot was the missing Nissan belonging to Intermountain. Detective Cupello then went to Webster's apartment and asked Webster if he had taken the car. Webster said he had never touched nor driven the car, whereupon Detective Cupello arrested Webster. A search of the car revealed no personal belongings, the police took no fingerprints from the car, and the keys to the car were never found.

¶ 5 While driving Webster to jail, Detective Cupello asked Webster if he had been arrested before. Remarkably, Webster volunteered that he had once been arrested in Virginia for "driving a vehicle off of a dealership lot."

¶ 6 That evening, after booking Webster into jail, Detective Cupello called Webster's wife. Detective Cupello informed her who he was and told her that her husband had been arrested for possession of a stolen vehicle. He described the car and explained that it had been found in the parking lot of their apartment complex and that Webster had denied ever having touched the car. Webster's wife responded, "He's lying." She explained that she and Webster had both been driving the car, that she had been driving in the car with Webster just two days earlier, and that Webster claimed it was all right for him to have the car. She said she believed

that Webster had taken the car back to Intermountain on July 8 when he quit his job. When Detective Cupello told her that Webster denied ever driving the car, she said, "We have a problem."

¶ 7 At trial, Webster did not testify. The trial court, however, over Webster's objection, allowed the State to question Detective Cupello about the statement made to him by Webster regarding Webster's prior theft of a car in Virginia. Prior to trial, there had been considerable discussion as to whether Webster's wife would assert her spousal privilege, and the State prepared its case accordingly. When she was called, she exercised her privilege. The trial court, again over Webster's objection, then allowed the State to question Detective Cupello about the statements made to him by Webster's wife.

¶ 8 A jury found Webster guilty of wrongful appropriation of a motor vehicle, which the trial court classified as a third degree felony under Utah Code Ann. §§ 76-6-404.5, -412 (Supp.1998). This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Webster first contends that his wife's out-of-court statements to Detective Cupello should not have been admitted under either of the grounds relied on by the trial court, i.e., the statement against interest exception to the hearsay rule, Utah R. Evid. 804(b)(3), and the residual exception to the hearsay rule, Utah R. Evid. 804(b)(5). We first address whether Webster's wife's conversation with Detective Cupello qualifies under Rule 804(b)(3) as a statement against her interest. This determination involves applying the law expressed in the rule to the hearsay statement and the circumstances under which it was made. "In the abstract, the effect of a given set of facts is a question of law and, therefore, one on which an appellate court owes no deference to a trial court's determination." *State v. Pena,* 869 P.2d 932, 936 (Utah 1994). In applying some legal rules, however, we nonetheless allow trial courts a measure of discretion in applying given facts to the articulated legal standard. *See id.* at 937. We have found no Utah case

outlining a specific standard of review for admissibility determinations under Rule 804(b)(3) of the Utah Rules of Evidence. Recognizing that Rule 804(b)(3) admissibility decisions are fact sensitive in the sense that the context of the particular hearsay statement must be taken into account, we grant the trial court a corresponding measure of discretion in making its Rule 804(b)(3) determination.

¶ 10 Our resolution of Webster's claim under Rule 804(b)(5) turns on our interpretation of that rule's notice requirement. "[I]nterpretation of a rule [of evidence] constitutes a conclusion of law, which we review for correctness[.]" *Schreiter v. Wasatch Manor, Inc.*, 871 P.2d 570, 572 (Utah Ct.App.), *cert. denied*, 879 P.2d 266 (Utah 1994).

■ ¶ 11 Webster next argues that evidence of his prior arrest for a similar offense should not have been admitted under Rule 404(b) of the Utah Rules of Evidence, governing the admissibility of evidence of prior "bad acts." Admission of evidence under Rule 404(b) is reviewed for abuse of discretion. *See State v. Decorso*, 1999 UT 57,- ¶¶ 16–18, 993 P.2d 837, *cert. denied*, 528 U.S. 1164, 120 S.Ct. 1181, 145 L.Ed.2d 1088 (2000). However, "admission of prior crimes evidence itself must be scrupulously examined by trial judges in the proper exercise of that discretion." *Id.* at ¶ 18. In other words, failure of a trial court to undertake a scrupulous examination in connection with the admission of prior bad act evidence constitutes an abuse of discretion. *See id.*

■ ¶ 12 Webster's final argument is that the trial court erred in classifying wrongful appropriation of a motor vehicle as a third degree felony under the statutory scheme then in effect. This argument raises an issue of statutory interpretation. Statutory interpretation presents a question of law, which we review for correctness, affording no particular deference to the trial court's conclusions. *See State v. Martinez*, 2000 UT App 320, ¶ 4, 14 P.3d 114.

## I. Hearsay

¶ 13 Webster's first claim is that his wife's out-of-court statements to Detective Cupello should not have been admitted. After Detective Cupello arrested Webster, the detective called and spoke with Webster's wife on the telephone. When Webster's wife exercised her spousal privilege and declined to testify at trial, the court ruled that Detective Cupello could testify regarding the statements she made to him. Detective Cupello's testimony regarding his conversation with Webster's wife was as follows:

Q. Okay. And what time did you contact [Webster's wife]?

A. We waited for her to get home from work, so I am guessing about 5:30.

Q. Did you contact her by phone?

A. I did.

Q. And what did you tell her when you called her on the phone?

A. The first thing I told her was who I was and where her husband was at and why he was there.

Q. And what specifically did you tell her [was] the reason that he was there?

A. That he was arrested for possession of [a] stolen vehicle.

Q. Did you tell her what the vehicle was?

A. I did.

Q. What did you tell her[?]

A. I told her the vehicle had been recovered in the parking lot in the apartment complex that they lived in and when I spoke with him he said he had never touched the vehicle.

Q. You told [her] that her husband had said that he had never touched the vehicle?

A. I did.

Q. What was her response to that?

A. He is lying.

[Defense Attorney]: Objection, hearsay.

THE COURT: Thank you. You have made the objection previously and it was overruled and I can overrule it again.

. . . .

Q. [Prosecutor:] Did she give you any further information about the vehicle?

A. [Detective Cupello:] That she had been driving around in the vehicle with him two days prior.

. . . .

Q. To the best of your recollection, tell us exactly what [she] told you during this conversation. Everything that she told you[.]

A. Her husband had been working at Intermountain VW, she said, for a couple of weeks. There was a problem with the hours that he was working. She asked him to quit the job. [She] said it was her understanding that it was okay for him to be driving this car, that they had both been driving it around when he was in. She had thought he had quit two days prior, so that would have been July 8. It was her understanding the car was taken back to Intermountain VW and dropped off and she was very surprised to find out the car was still in the parking lot where she lived.

Q. Okay. [Was] she also surprised when you told her the defendant had told you that he had never driven the car?

A. Yes.

Q. And her response to that?

A. We have a problem.

¶ 14 The trial court admitted the foregoing testimony under the hearsay exception for statements against interest, Utah R. Evid. 804(b)(3), and, alternatively, the residual exception, Utah R. Evid. 804(b)(5). We separately address the trial court's admission of this hearsay testimony under each exception.

### A. Exception for Statements Against Interest

¶ 15 The Utah Rules of Evidence allow admission of hearsay if it is "[a] statement which ... at the time of its making ... so far tended to subject the declarant to ... criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Utah R. Evid. 804(b)(3). Webster's wife's statements did not subject her to criminal liability. Despite her volunteering that she had driven a car Detective Cupello had just told her was stolen and her remarking, "We have a problem," her statements to Detective Cupello taken as a whole were not against her penal interest. She admitted no wrongdoing. Rather, she disclaimed any knowledge that the car had been stolen or wrongfully used, claimed that she thought the car had been returned two days earlier, and squarely placed the blame for any wrongdoing on her husband. The trial court exceeded the scope of its discretion in admitting Webster's wife's hearsay statements as being against her penal interest. By shifting any potential criminal responsibility from herself to her husband, her statements were fully consistent with her own penal interest.

### B. Residual Exception

¶ 16 The trial court ruled alternatively that Webster's wife's hearsay statements were admissible under Utah R. Evid. 804(b)(5), one of the residual exceptions to the hearsay rule. Webster argues that, even assuming his wife's statements were otherwise admissible under Rule 804(b)(5), their admission was improper because the State did not comply with the notice requirement of Rule 804(b)(5). The notice requirement contained in the last sentence of the rule states:

> [A] statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Utah R. Evid. 804(b)(5).

### 1. Notice of the Statement and its Particulars

¶ 17 The State did not give actual pretrial notice of its intent to offer Webster's wife's statements through the testimony of Detective Cupello, but it argues that it met the rule's notice requirement because Webster knew before trial of the State's intent to call his wife as a witness. Notice of intent to call Webster's wife as a witness, however, is not equivalent to notice that the State intended to offer the statements she made to Detective Cupello, which were clearly hearsay. Had the State been able to successfully call Webster's wife as a witness, the State would

likely not have asked her to recount her statements to Detective Cupello. Rather, the State would have attempted to elicit her direct testimony that she saw her husband driving the car and that he parked the car in the parking lot of the apartment complex where they lived. Thus, Webster's knowledge that the State wished to call his wife as a witness does not necessarily amount to notice of the State's intent to call Detective Cupello to the stand to elicit the hearsay statements she made to him.

¶ 18 For us to hold that the State met the pretrial notice requirement in this case would be tantamount to saying that a party need not be given notice of the proponent's intent to offer specific hearsay evidence, but need only be on notice of the *existence* of the evidence the proponent may eventually attempt to offer, perhaps relying on the residual exception. The plain language of the rule requires that an opposing party have more than mere notice of the existence of particular evidence. It requires actual notice of a proponent's intent to offer specific hearsay evidence and the particulars of that evidence. The State here did not give Webster actual pretrial notice of its intent to offer his wife's hearsay statements made to Detective Cupello, nor did it provide notice of the particulars of those statements, especially as recollected by Detective Cupello.

### 2. Notice of Intent to Rely on the Residual Exception

¶ 19 Although the State did not give Webster formal pretrial notice of its intent to offer Webster's wife's hearsay statements, or notice of the particulars of those statements, Webster concedes that he anticipated the State's intent to offer his wife's statements to Detective Cupello in the event that she refused to testify. Rather than concede harmless error, however, Webster argues that the State failed to meet the notice requirement because it did not give him notice of its *intent to rely on the residual exception* in trying to get the hearsay in. It is true that the notice requirement could be read to require the proponent to give notice only of the particulars of the statement and of the intent to offer it, but not of the intent to rely on the

residual exception. We observe, however, that " '[o]ne of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject.' " *Mountain States Tel. & Tel. Co. v. Payne*, 782 P.2d 464, 466 (Utah 1989) (quoting *Masich v. United States Smelting, Ref. & Mining Co.*, 113 Utah 101, 108, 191 P.2d 612, 616 (1948)). The context of the residual exception is revealing.

¶ 20 The Utah Rules of Evidence contain twenty-nine exceptions to the hearsay rule. *See* Utah R. Evid. 803 & 804. The companion residual exceptions, Rule 803(24) and Rule 804(b)(5), are unique among those twenty-nine in requiring notice when a hearsay proponent intends to rely on one of them. It makes little sense, given the uniqueness of the residual exceptions' notice requirement, to assume that the drafters meant to require notice *when* a hearsay proponent intends to rely on a residual exception but not require concurrent notice *that* a proponent intends to rely on one of the residual exceptions.

¶ 21 Furthermore, the very purpose of the notice provision as acknowledged by the State in its brief—"to afford the adverse party an opportunity to attack the statement's trustworthiness," *see Piva v. Xerox Corp.*, 654 F.2d 591, 596 (9th Cir.1981)—is frustrated when notice of intent to rely on a residual exception is not given. This case typifies the problem. Although Webster anticipated the State's intent to offer his wife's hearsay statements and was apparently prepared to contest their admission under Rule 804(b)(3), he may not have been prepared to contest, and the trial court was afforded little reasoned argument from either side regarding, the general trustworthiness of her hearsay statements. It is against the spirit and reason of our scheme of specific and narrow hearsay exceptions to require a party to both anticipate the few exceptions a particular hearsay statement may arguably fit under, and in each instance also be prepared to contest the applicability of the residual exception and the general trustworthiness of the hearsay statement. Unless given the required notice that a proponent intends to

rely on the residual exception as a basis for admitting hearsay, an opposing party need not anticipate the residual exception and be prepared to contest the statement's trustworthiness generally, but rather need only be prepared to contest whether the statement fits under one of the other specific, narrow exceptions.

¶ 22 We conclude that the notice provision of Rule 804(b)(5) requires notice of the proponent's intent to rely on that exception, and we find support for our conclusion in the case law of several federal jurisdictions.[1] See *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 167 (3rd Cir.1995) (requiring notice of intent to rely on the residual exception), *cert. denied*, 516 U.S. 1145, 116 S.Ct. 1015, 134 L.Ed.2d 95 (1996); *United States v. Brown*, 770 F.2d 768, 771 (9th Cir.1985) (same), *cert. denied*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986); *United States v. Guevara*, 598 F.2d 1094, 1100 (7th Cir.1979) (same); *United States v. Ruffin*, 575 F.2d 346, 358 (2nd Cir.1978) (same).[2]

¶ 23 Under the notice requirement of Rule 804(b)(5), the best practice is for a party to give formal notice of the hearsay evidence, the particulars of that evidence, the name and address of the declarant, and the party's intent to. rely on the residual exception. Such notice should be given sufficiently in advance of trial for the adverse party to be able to prepare to meet the offered hearsay.[3] In this case, the State failed to give any kind of pretrial notice of its intent to offer Webster's wife's hearsay statements; notice of its intent to rely on the residual exception; and notice of the particulars of Webster's wife's hearsay statements as recollected by Detective Cupello. Because the State failed to comply with the rule's notice requirement, it was error for the trial court to admit Webster's wife's hearsay statements to Detective Cupello under Rule 804(b)(5).

### 3. Trustworthiness

¶ 24 Although we have concluded that the trial court erred in admitting the statements Webster's wife made to Detective Cupello on notice grounds, and reverse on that basis, it is appropriate that we discuss another issue, because "where an appellate court finds that it is necessary to remand a case for further proceedings, it has the duty

1. "Since the advisory committee generally sought to achieve uniformity between Utah's rules [of evidence] and the federal rules [of evidence], this [c]ourt looks to the interpretations of the federal rules by the federal courts to aid in interpreting the Utah rules." *State v. Gray*, 717 P.2d 1313, 1317 (Utah 1986).

2. The *Brown, Guevara*, and *Ruffin* cases actually interpret Rule 804(b)(5)'s companion residual exception, Rule 803(24), which applies regardless of whether the declarant is available. *See Brown*, 770 F.2d at 771; *Guevara*, 598 F.2d at 1100; *Ruffin*, 575 F.2d at 358. Rules 803(24) and 804(b)(5) are phrased identically, and we are comfortable giving their identical notice requirements the same interpretation and in relying on case law interpreting one rule's notice requirement in construing the notice requirement of the other. We also note that while the Utah Rules of Evidence still have separate rules 803(24) and 804(b)(5), the Federal Rules of Evidence have recently merged the two provisions into new Rule 807. *See United States v. Hall*, 165 F.3d 1095, 1109–1111 nn. 7 & 8 (7th Cir.), *cert. denied*, 527 U.S. 1029, 119 S.Ct. 2381, 144 L.Ed.2d 784 (1999).

3. Notwithstanding the express language of the residual exception, a number of courts have adopted a "flexible approach" to the requirement that notice under Rule 804(b)(5) or Rule 803(24) be given prior to trial. *See Furtado v. Bishop*, 604 F.2d 80, 92 (1st Cir.1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980); *United States v. Bailey*, 581 F.2d 341, 348 (3rd Cir.1978); *United States v. Leslie*, 542 F.2d 285, 291 (5th Cir.1976); *United States v. Carlson*, 547 F.2d 1346, 1355 (8th Cir.1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). We are not here presented with circumstances meriting a decision of whether to adopt a flexible approach to the requirement that Rule 804(b)(5) notice be given prior to trial. When his wife exercised her spousal privilege and declined to testify, Webster received actual notice of the State's intent to offer her hearsay statements through Detective Cupello and of the State's intent to rely on Rule 804(b)(5). The record nowhere indicates, however, that the State ever gave Webster, in advance of Detective Cupello's testimony, the particulars of Webster's wife's hearsay as recollected by Detective Cupello. Because the notice to Webster was deficient in this respect, even a flexible approach to the requirement that notice be given pretrial would be unavailing to the State. We therefore decline to address the propriety of adopting a flexible approach to the requirement that Rule 804(b)(5) notice be given prior to trial until we are squarely presented with the issue.

of 'pass[ing] on matters which may then become material.'" *Bair v. Axiom Design, L.L.C.,* 2001 UT 20, ¶ 22, 20 P.3d 388 (quoting *LeGrand Johnson Corp. v. Peterson,* 18 Utah 2d 260, 263, 420 P.2d 615, 617 (1966)). Webster's alternative argument—that the trial court erred in concluding his wife's hearsay statements conform with the trustworthiness requirement of Rule 804(b)(5)—is likely to resurface on remand.[4] While we express no opinion on the ultimate determination made by the trial court regarding the trustworthiness of Webster's wife's statements, we do conclude that the inquiry and analysis by the trial court on this issue were insufficient.

¶ 25 Rule 804(b)(5) states, with our emphasis, that the following types of hearsay statements not falling within other exceptions may nonetheless be admitted:

*A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness,* if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

¶ 26 The Utah Supreme Court has said that the residual exception "was intended for use in those *rare cases* where ... [the statement's] admission is justified by the inherent reliability of the statement and the need for its admission." *State v. Nelson,* 777 P.2d 479, 482 (Utah 1989) (emphasis added).[5] Furthermore, several federal circuit courts have said that Rule 804(b)(5) is to be "'used *very rarely,* and only in *exceptional circumstances.*'"[6] *United States v. Trujillo,* 136 F.3d 1388, 1395 (10th Cir.) (emphasis added) (quoting S. Rep. No. 1277, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N.

7051, 7066), *cert. denied,* 525 U.S. 833, 119 S.Ct. 87, 142 L.Ed.2d 69 (1998). *Accord O'Brien v. National Gypsum Co.,* 944 F.2d 69, 73 (2nd Cir.1991) (same); *United States v. Calkins,* 906 F.2d 1240, 1245 (8th Cir.1990) (same).

 ¶ 27 The United States Court of Appeals for the Seventh Circuit has identified a number of factors that courts should consider in determining whether a hearsay statement has sufficient circumstantial guaranties of trustworthiness to be admitted under one of the residual exceptions. *See United States v. Hall,* 165 F.3d 1095, 1110–11 (7th Cir.), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2381, 144 L.Ed.2d 784 (1999); *United States v. Bradley,* 145 F.3d 889, 894–95 (7th Cir. 1998); *United States v. Kladouris,* 964 F.2d 658, 663 (7th Cir.1992).

In determining whether a statement is sufficiently reliable for purposes of Rule 803(24), a court should examine, among other factors: (1) the probable motivation of the declarant in making the statement; (2) the circumstances under which it was made; and (3) the knowledge and qualifications of the declarant. Similarly, in construing Rule 804(b)(5), we have identified several additional factors that may be considered in determining whether hearsay testimony has sufficient "guarantees of trustworthiness." ...: (1) the character of the declarant for truthfulness and honesty and the availability of evidence on the issue; (2) whether the [statement] was given voluntarily, under oath, subject to cross examination and a penalty for perjury; (3) the extent to which the [declarant's statement] reflects his personal knowledge; (4) whether the [declarant] ever recanted his [statement]; and (5) whether the declarant's statement was insufficiently corroborated.

*Hall,* 165 F.3d at 1110–11 (internal quotes,

---

4. The State makes a harmless error argument, which we address hereafter, and we conclude that the evidentiary errors in this case were not harmless and thus merit remand.

5. The Supreme Court's statement in *Nelson* was actually made in reference to Rule 803(24). *See*

777 P.2d at 482. We are confident that the Court's general observation in *Nelson* regarding Rule 803(24) has equal application to Rule 804(b)(5). *See* note 2.

6. *See* note 1.

citations, and footnote omitted).[7] *See also Bradley,* 145 F.3d at 894–95 (identifying substantially similar factors as well as the additional factors of "the relationship of the declarant to the defendant and the government; ... the immediacy of the declaration to the event described; ... consistency in the recitation of the statement over time; and the reasons for the declarant's unavailability"); *Kladouris,* 964 F.2d at 663 (identifying substantially similar factors). We approve of the factors recognized by the Seventh Circuit, and, with that court, observe that "these factors are neither exhaustive nor necessary prerequisites for admissibility of hearsay under [one of the residual exceptions], [but] they shed light on the sort of considerations a [trial] court should take into account when evaluating the 'trustworthiness' of a hearsay statement." *Hall,* 165 F.3d at 1111.

¶ 28 In the instant case, the trial court's analysis of the trustworthiness of Webster's wife's hearsay statements was both very general and very brief:

I think there are guarantees of trustworthiness. I am guessing the officer is going to tell us she made these statements in his presence; and more importantly, I think that they are statements that ... there is no reason she should say one way or the other.

It seems to me either they are against her interest or they are of no importance at all other than, for example, one might say, "Well, today it looks like it might rain." They have no particular impact one way or the other. So I think for that reason, there is a trustworthy attachment because they are by and large mere statements of inconsequential events if taken in the context that you described.

¶ 29 The trial court's first "finding," to the effect that Webster's wife made her statements to Detective Cupello while in his presence, is clearly erroneous. Its second observation, that Webster's wife's statements to Detective Cupello were "mere statements of inconsequential events," is likewise erroneous. On the contrary, her statements proved to be the only evidence directly establishing that Webster drove the car home and left it in the parking lot of the apartment complex where he lived.

¶ 30 A proper inquiry into whether hearsay bears circumstantial guaranties of trustworthiness equivalent to the trustworthiness inherent in the established hearsay exceptions will include analysis of the types of factors outlined by the Seventh Circuit and here endorsed by us. Should the question again arise on remand, the trial court should undertake similarly focused analysis of the trustworthiness of the hearsay statements made by Webster's wife.[8]

## II. Other Bad Act Evidence

¶ 31 Webster next contends that testimony about his prior arrest in Virginia for stealing a car from a dealership lot

---

7. *Hall* dealt with admission of hearsay evidence under Rule 803(24). Justice Durham has intimated that perhaps the test for circumstantial guaranties of trustworthiness is more stringent under Rule 803(24) than under Rule 804(b)(5):

 "Rule 804(b)(5) will conceivably be relied upon more than Rule 803(24) for only in circumstances where the guarantees of trustworthiness are inordinately high, or the evidence is of a kind where cross-examination would not enhance reliability, should hearsay evidence be admitted in an individual case pursuant to Rule 803(24) if the declarant is available and does not appear."

 *State v. Lenaburg,* 781 P.2d 432, 440 (Utah 1989) (Durham, J., dissenting) (quoting 4 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 803(24)[01], at 804-173 (1988)). However, even if Rule 803(24)'s trustworthiness requirement is more stringent, the *types* of factors to consider in mak-

ing a trustworthiness determination do not change between Rule 803(24) and Rule 804(b)(5).

8. Webster also raises constitutional arguments against admission of his wife's hearsay statements under the Confrontation Clause of the United States Constitution, U.S. Const. amend. VI, the Confrontation Clause of the Utah Constitution, Utah Const. art. I, § 12, and the Spousal Immunity Clause of the Utah Constitution, Utah Const. art. I, § 12. "[A] constitutional question is not to be reached if the merits of the case in hand may be fairly determined on other than constitutional issues." *Hoyle v. Monson,* 606 P.2d 240, 242 (Utah 1980). Because we have resolved the issue of admission of Webster's wife's hearsay on other grounds, we do not address the constitutional claims made by Webster.

should not have been permitted.[9] Utah R. Evid. 404(b) governs the admission of evidence of other bad acts. It states:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show actions in conformity therewith. It may, however, be admissible for other purposes, such as proof of notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In other words, evidence offered under this rule is admissible if it is relevant for a non-character purpose and meets the requirements of Rules 402 and 403.

Utah R. Evid. 404(b).

> [I]n deciding whether evidence of [other bad acts] is admissible under rule 404(b), the trial court must determine (1) *whether such evidence is being offered for a proper, noncharacter purpose under 404(b),* (2) whether such evidence meets the requirements of rule 402, and (3) whether this evidence meets the requirements of rule 403.

*State v. Decorso,* 1999 UT 57, ¶ 20, 993 P.2d 837 (emphasis added), *cert. denied,* 528 U.S. 1164, 120 S.Ct. 1181, 145 L.Ed.2d 1088 (2000). "Under the first part of this analysis, the proponent must demonstrate that the evidence is actually being offered for a proper, noncharacter purpose, such as those specifically listed in the rule." *Id.* at ¶ 21. The State asserts that it offered the evidence of Webster's other bad act for two noncharacter purposes: (1) to prove identity and (2) to prove intent. We consider each rationale in turn.

### A. Identity

¶ 32 The State contends that Webster's prior act of stealing a car from a dealership lot is similar enough to the alleged conduct in this case to admit evidence of Webster's prior act to prove Webster's identity as the perpetrator of the alleged crime here. While at first blush this contention seems persuasive, the analysis of *State v. Decorso,* 1999 UT 57, 993 P.2d 837, convinces us otherwise.

¶ 33 "Identity was the crux of [the *Decorso*] case." *Id.* at ¶ 27. Decorso was tried for the murder of a store clerk at a Payless Shoesource store in West Jordan, Utah. *See id.* at ¶¶ 2, 10. At trial, evidence of a separate burglary at a Payless Shoesource store in nearby Draper, Utah, where a clerk identified Decorso as the perpetrator of the burglary, was admitted under Utah Rule of Evidence 404(b). *See id.* at ¶¶ 7, 11–12. In affirming the trial court's determination that evidence of the Draper burglary was properly offered for the noncharacter purpose of establishing the identity of the killer at the West Jordan store, the Utah Supreme Court focused on the similarities between the West Jordan and Draper crimes. *Id.* at ¶ 27.

> For instance, the perpetrator of both crimes waited until after the stores had closed and the doors were locked to commit these crimes. He apparently entered both stores posing as a customer and then remained there until after closing. The victims of both crimes were female Payless store clerks. The perpetrator of the West Jordan murder took two pairs of shoes, while the perpetrator of the Draper Payless burglary had set a bag containing three pairs of shoes down on the floor in a back room of the store. Fingerprints matching those of Decorso were found at both stores following these crimes. At both stores, the perpetrator removed or cut the telephone cord. The perpetrator of both crimes apparently used or planned to use some type of rubber gloves.

*Id.* Relying on these similarities and calling them "numerous" and "signature-like," the Supreme Court concluded that evidence of the Draper crime "was offered for a proper, noncharacter purpose—i.e., to establish the identity of the [West Jordan] killer." *Id.*

¶ 34 The First Circuit's approach to this issue in *United States v. Trenkler,* 61

---

9. Webster's statement to Detective Cupello regarding his prior arrest, although an out-of-court statement offered for its truth, qualifies under Utah Rule of Evidence 801(d)(2) as an admission by a party-opponent and is thus non-hearsay. *See State v. Kerekes,* 622 P.2d 1161, 1164 (Utah 1980) (decided under rules of evidence in effect before Utah's adoption of rules patterned after Federal Rules of Evidence). Like all other evidence, however, the statement is still subject to the requirements of Rule 404(b).

F.3d 45 (1st Cir.1995), accords with the Utah Supreme Court's analysis in *Decorso* and provides trial courts with a further measure of guidance.[10] The *Trenkler* court stated that "[w]hen ... Rule 404(b) evidence is offered because it has a 'special relevance' on the issue of identity, we ... require[ ], as a prerequisite to admission, a showing that there exists a *high degree of similarity* between the other act and the charged crime." *Id.* at 52 (emphasis added). The First Circuit concluded that evidence of a prior bad act should be admitted only when it is shown that "the other act and the charged offense are sufficiently idiosyncratic that a reasonable jury could find it more likely than not that the same person performed them both." [11] *Id.* at 53.

■ ¶ 35 Given the sparse record in this case, we cannot say that Webster's act of stealing a car from a Virginia dealership bears either numerous or signature-like similarities to the crime charged in this case. The only similarities apparent on the record between the two incidents are that (1) a car was stolen (2) from a dealership lot. This pair of facts is not sufficiently " 'unique as to constitute a signature.' " *State v. Cox,* 787 P.2d 4, 6 (Utah Ct.App.1990) (citation omitted). Thus, we conclude on these facts that the trial court exceeded its discretion in determining that the State offered the evidence of Webster's prior bad act in Virginia for the noncharacter purpose of proving identity. It was beyond the trial court's range of sound discretion to hold on these facts alone that a reasonable jury could find it more likely than

not that the same person committed both crimes.

## B. Intent

¶ 36 In addition to admitting the evidence of Webster's auto theft in Virginia for the purpose of proving identity, the trial court admitted the evidence for the alternative purpose of proving Webster's intent.

■ ¶ 37 In essence, the trial court admitted the evidence on the theory that Webster's intent to steal a car from a dealership lot in Virginia at some time in the past is probative of the fact that Webster intended on July 10, 1998, to steal a car from a dealership lot in Utah. The State, however, failed to provide the trial court with sufficient details about the prior incident—perhaps most notably the date it occurred and whether it happened while Webster was an employee of the dealership—to justify a conclusion that Webster was acting on July 10, 1998, pursuant to a common scheme or plan of which his Virginia act was also a part.[12] "In its effort to justify admission, 'the State has fallen into the common error of equating acts and circumstances which are merely similar in nature with the more narrow common scheme or plan.' " *State v. Featherson,* 781 P.2d 424, 429 (Utah 1989) (quoting *State v. Harris,* 36 Wash.App. 746, 677 P.2d 202, 205 (1984)). Furthermore, the trial court's ruling on this issue without adequate information regarding the prior bad act does not qualify as the type of "scrupulous[ ] examin[ation required of] trial judges in the prop-

---

10. As already noted, "[t]his [c]ourt looks to interpretations of the federal rules by the federal courts to aid in interpreting the Utah rules." *State v. Gray,* 717 P.2d 1313, 1317 (Utah 1986).

11. In its brief, the State says: "No one below identified for the trial court the specific details of the Virginia offense, and defendant has not claimed his counsel rendered ineffective assistance for not doing so." The State's observation implies that Webster somehow had the burden of proving sufficient dissimilarity between the prior bad act and the charged conduct to prevent admission of evidence of the prior conduct. The State is mistaken. It is the party seeking admission of the bad act evidence that has the burden of proving sufficient *similarity* between the other act and the charged act to allow admission of evidence of the other act. *See Trenkler,* 61 F.3d

at 52 ("When ... Rule 404(b) evidence is offered ... we have required, as a prerequisite to admission, a showing that there exists a high degree of similarity between the other act and the charged crime.").

12. We have previously observed that evidence of a common scheme or plan is not always required for admission of prior bad act evidence to prove *identity. See Salt Lake City v. Alires,* 2000 UT App 244, ¶ 13, 9 P.3d 769. In this case, the State's theory for admission of evidence of Webster's prior bad act to prove *intent* relies implicitly on the proposition that the two acts are part of a common scheme or plan. Indeed, given the facts of record, no other theory could justify admission of evidence of Webster's prior bad act to prove his intent to steal a car on July 10, 1998.

er exercise of [their] discretion." *State v. Decorso*, 1999 UT 57,¶ 18, 993 P.2d 837, *cert. denied*, 528 U.S. 1164, 120 S.Ct. 1181, 145 L.Ed.2d 1088 (2000). The trial court exceeded the scope of sound discretion in ruling that evidence of Webster's auto theft in Virginia, at some unidentified time in the past,[13] was probative of the fact that he had the intent on July 10, 1998, to steal a car in Utah.[14]

### III. Prejudicial Error

■ ¶ 38 We have held that it was error both for the trial court to admit Webster's wife's hearsay statements to Detective Cupello and for the trial court to admit evidence of Webster's prior bad act in Virginia. "[A]n erroneous decision to admit or exclude evidence does not[, however,] result in reversible error unless the error is harmful." *State v. Villarreal*, 857 P.2d 949, 957 (Utah Ct.App. 1993), *aff'd*, 889 P.2d 419 (Utah 1995). *See also* Utah R. Evid. 103(a); Utah R. Crim. P. 30(a). "For an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *State v. Knight*, 734 P.2d 913, 920 (Utah 1987).

¶ 39 Erroneous admission of Webster's wife's hearsay statements and evidence of Webster's prior bad act in Virginia were not harmless. Without this evidence, the State's case amounted to the following: Webster had been working at Intermountain Volkswagen as a salesman; the Intermountain lot coordinator said that while Webster was an employee at Intermountain, he saw Webster driving off the lot in a car not allowed to be driven by salesmen; the lot coordinator did not see Webster return the car, and he did not see the car on the lot again before July 10; Webster quit his job at Intermountain after working there only two weeks; the car Webster had allegedly been seen driving was then found, on July 10, in the parking lot of the apartment complex where Webster and his wife lived; Webster denied to police that he had ever touched the car. This evidence, while largely circumstantial, would admittedly be sufficient to sustain Webster's conviction. Nonetheless, had the jury not been given the additional evidence indicating that Webster admitted to stealing a car previously and that Webster's wife, conceding they "ha[d] a problem," confirmed he had driven the car in question for a couple of days and left it in the parking lot where he lived, we are not confident that the jury would still have found him guilty beyond a reasonable doubt of wrongful appropriation of a motor vehicle. Indeed, the damning statements by Webster's wife and his apparent history of

---

**13.** Although at the time of its admissibility ruling the trial court apparently did not know when Webster's prior bad act occurred, the presentence report indicates that Webster's theft of a car in Virginia occurred seven years before the alleged crime in this case. This additional fact only further supports the conclusion that the evidence of Webster's prior bad act should not have been admitted.

In *State v. Featherson*, the defendant was charged with aggravated sexual assault. *See* 781 P.2d 424, 425 (Utah 1989). Evidence of several prior bad acts by the defendant were admitted at trial, including a rape conviction eight years earlier, two incidents of assault that did not result in convictions nine and ten years earlier, and two sexual assault convictions four years earlier. *See id.* at 425–426. In holding that evidence of each of these prior bad acts was inadmissible, despite the multitude of seemingly similar bad acts, the Utah Supreme Court explained:

> [I]t was error to admit evidence of the prior convictions and prior incidents [because] they were too remote. The prior rape conviction in 1979 and the incidents [of assault] in 1977 and 1978 occurred nine or more years prior to the trial. The two convictions of aggravated assault in 1983[, four years earlier,] were likewise too remote to demonstrate any common scheme or pattern. Remoteness refers to the time between the prior crime and the offense for which the accused is on trial, but the test for remoteness is not a mechanical application. The relevant inquiry is whether the other acts have "clearly probative value with respect to the intent of the accused *at the time of the offense charged.*"

*Id.* at 429–30 (emphasis in original; citation omitted).

The fact that the record indicates that Webster's bad act in Virginia occurred seven years before the alleged crime here strongly suggests that the two thefts were too disparate in time to be part of a single scheme to steal cars.

**14.** Because we have concluded that the trial court exceeded its discretion in ruling that evidence of Webster's prior bad act was probative of identity and intent, the evidence fails the first part of Rule 404(b) analysis. Thus, we need not conduct a Rule 402 or Rule 403 analysis. *See Decorso*, 1999 UT 57 at ¶21, 993 P.2d 837.

taking cars that did not belong to him could easily have been the deciding factors in the jury's deliberations. We thus reverse and remand for a new trial.

## IV. Degree of Offense

¶ 40 "Although resolution of the above issue[s] is dispositive of the present case," we again observe that "where an appellate court finds that it is necessary to remand a case for further proceedings, it has the duty of 'pass[ing] on matters which may then become material.'" *Bair v. Axiom Design, L.L.C.,* 2001 UT 20, ¶ 22, 20 P.3d 388 (quoting *LeGrand Johnson Corp. v. Peterson,* 18 Utah 2d 260, 263, 420 P.2d 615, 617 (1966)) (second alteration in original). Because on remand the proper classification of the crime of wrongful appropriation of a motor vehicle may again become material, we address Webster's last argument, i.e., that the trial court erred in classifying his alleged conduct—unauthorized control of a motor vehicle with intent to temporarily deprive the owner of possession—as a third degree felony under Utah Code Ann. §§ 76-6-404.5, -412 (Supp.1998).

■ ¶ 41 More than one section of the Utah Code in effect in July of 1998 could arguably be read as defining the crime of, and setting the penalty for, unauthorized control of a motor vehicle. *See* Utah Code Ann. §§ 41-1a-1314, 76-6-404.5, 76-6-412 (Supp.1998). In determining which code section controls, "we follow the well-accepted rules of statutory construction that the provisions must be harmonized with the legislative intent and purpose and that the more specific provisions ... take precedence over and control the more general provisions." *Forbes v. St. Mark's Hosp.,* 754 P.2d 933, 935 (Utah 1988).

¶ 42 Wrongful appropriation is defined in *general* terms as follows:

(1) A person commits wrongful appropriation if he obtains or exercises unauthorized control over the property of another, without consent of the owner or legal custodian and with intent to temporarily appropriate, possess, or use the property or to temporarily deprive the owner or legal custodian of possession of the property.

Utah Code Ann. § 76-6-404.5(1) (Supp.1998). Section 76-6-404.5(3) goes on to explain the classification scheme for wrongful appropriation crimes generally: "Wrongful appropriation is punishable one degree lower than theft, as provided in Section 76-6-412[.]" [15] *Id.* § 76-6-404.5(3).

¶ 43 The Legislature has seen fit to specifically define wrongful appropriation *of a motor vehicle:*

(1) Except as provided in Subsection (3), it is a class A misdemeanor for a person to exercise unauthorized control over a motor vehicle, trailer, or semitrailer, not his own, without the consent of the owner or lawful custodian, and with the intent to temporarily deprive the owner or lawful custodian of possession of the motor vehicle, trailer, or semitrailer.

. . . .

(3) Violation of this section is a third degree felony if:

(a) the person does not return the motor vehicle, trailer, or semitrailer to the owner or lawful custodian within 24 hours after the exercise of unlawful control . . . .

Utah Code Ann. § 41-1a-1314 (Supp.1998). Because of its specificity, in cases of wrongful appropriation of a motor vehicle, section 41-1a-1314 clearly takes precedence over section 76-6-404.5.

¶ 44 Our conclusion is in accord with legislative intent. At the time of Webster's alleged offense, section 76-6-404.5 contained legislative acknowledgment that, in cases of unauthorized control of a motor vehicle, the

---

**15.** Section 76-6-412 states: "(1) Theft of property and services as provided in this chapter shall be punishable: (a) as a felony of the second degree if the: . . . (ii) property stolen is . . . an operable motor vehicle[.]" Utah Code Ann. § 76-6-412(1)(a)(ii) (Supp.1998). While this section speaks specifically of motor vehicles, the crime it primarily classifies is *theft.* This section never becomes determinative in the case of *wrongful appropriation* of a motor vehicle because, as we discuss below, there is a separate section defining and setting the classification specifically for wrongful appropriation of a motor vehicle.

Motor Vehicle Code's more specific wrongful appropriation section governs. While section 76-6-404.5(3) notes that "[w]rongful appropriation is punishable one degree lower than theft, as provided in Section 76-6-412," it also directs that "an act of unauthorized control of motor vehicles, trailers, or semi-trailers which does not constitute theft is punishable under Section 41-1a-1311 [of the Motor Vehicle Code]." Utah Code Ann. § 76-6-404.5(3)(e) (Supp.1998). Due to what we can only assume was legislative oversight, section 76-6-404.5(3)(e) referred to section 41-1a-1311, which was repealed when section 76-6-404.5 was enacted, rather than to section 41-1a-1314. *See* Utah Code Ann. §§ 41-1a-1311, 76-6-404.5 (Supp.1998) (historical notes). The Legislature's reference to the repealed section 41-1a-1311 is explained, however, through an examination of the legislative history.

¶ 45 As late as 1996, section 41-1a-1311 defined and ascribed the penalty for short-term wrongful appropriation of a motor vehicle, while section 41-1a-1314 defined and ascribed the penalty for long-term wrongful appropriation of a motor vehicle. *See* Utah Code Ann. §§ 41-1a-1311, -1314 (1993 & Supp. 1996). In 1997, the substance of sections 41-1a-1311 and -1314 were combined under section 41-1a-1314; however, the Legislature failed to repeal section 41-1a-1311 at that time. In 1998, presumably recognizing this oversight of the previous year, the Legislature repealed section 41-1a-1311. Simultaneously with the repeal of section 41-1a-1311, the Legislature enacted section 76-6-404.5, including subsection (3)(e)'s reference to section 41-1a-1311. We cannot assume that with section 76-6-404.5 the Legislature meant to enact a meaningless subsection (3)(e). *See In re E.H.*, 880 P.2d 11, 13 (Utah Ct.App.) ("Utah courts have a duty to interpret statutes so that they will not be rendered meaningless."), *cert. denied*, 890 P.2d 1034 (Utah 1994). We thus view the Legislature's enactment of subsection (3)(e) as an intended reference to section 41-1a-1314, the section where the substance of section 41-1a-1311 had been moved the prior legislative session.

¶ 46 In any event, in the case of wrongful appropriation of a motor vehicle, the more specific provisions of section 41-1a-1314 prevail over the general provisions of section 76-6-404.5. Whether wrongful appropriation of a motor vehicle is properly classified, then, as a third degree felony or a class A misdemeanor depends on the length of time the perpetrator exercises unlawful control. On remand, the appropriate classification of the offense will be governed by section 41-1a-1314, and the factfinder should be instructed accordingly.

## CONCLUSION

¶ 47 We conclude that it was prejudicial error to admit the hearsay statements made by Webster's wife and the evidence of Webster's prior bad act. We therefore remand for a new trial or such other proceedings as may now be appropriate.

¶ 48 WE CONCUR: JUDITH M. BILLINGS, Judge, and WILLIAM A. THORNE, JR., Judge.