2004 UT App 445

**STATE of Utah, Plaintiff and Appellee,**

v.

**Romie Henry MILLER III, Defendant and Appellant.**

**No. 20030680–CA.**

Court of Appeals of Utah.

Nov. 26, 2004.

Rehearing Denied Feb. 4, 2005.

Stephen D. Spencer, Day Shell & Liljenquist, Murray, for Appellant.

Mark L. Shurtleff, atty. gen., and Jeffrey S. Gray, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges DAVIS, GREENWOOD, and JACKSON.

## OPINION

GREENWOOD, Judge:

¶ 1 Defendant Romie Miller appeals his conviction on ten counts of sexual exploitation of a minor, second degree felony, in violation of Utah Code section 76–5a–3. *See* Utah Code Ann. § 76–5a–3 (2003).[1] Specifically, Defendant argues that (1) the trial court erred in finding that Defendant abandoned his briefcase and any expectation of privacy he may have had in it; (2) even if he abandoned the briefcase, the trial court erred in finding that Officer Smith's subsequent search of the briefcase did not exceed the scope of the search conducted by private persons and thus he did not have to first obtain a search warrant; and (3) the trial court abused its discretion in admitting evidence of Defendant's possession of adult pornography under rule 404(b) of the Utah Rules of Evidence. We affirm.

## BACKGROUND

¶ 2 Defendant was a contract truck driver for C.R. England Trucking Company. On or about September 18, 2002, Defendant returned the truck he had been leasing from C.R. England and signed a lease on a new truck. On September 20, 2002, Brandon Harris, a C.R. England employee, retrieved a spare set of keys from the parts department and moved Defendant's returned truck to the garage to inspect it for mechanical and body damage, a normal procedure for returned lease trucks. While the truck was in the garage, Harris observed Defendant return to the truck and retrieve personal items from inside the truck. After returning from a fifteen-minute break and seeing that Defendant had left, Harris inspected the interior of the truck. Harris found a briefcase in front of the bed inside the sleeper portion of the truck. On the outside of the briefcase was a

---

1. Because Utah Code section 76–5a–3 has not been amended since Miller was charged, for ease of reference, we cite to the most recent version of the statute.

note which read "old bills." The briefcase also had latches with combination locks and tape wrapped around it. Harris opened the briefcase, trying to find some kind of identifying information.[2] Inside the briefcase, he discovered what he believed to be child pornography. Harris took the briefcase to his supervisor, Bob Batt, who thumbed through about one-third of the pictures. While reviewing the pictures, both Harris and Batt saw additional photos of what they believed was child pornography. Thereafter, they contacted Cari Johanson, a human resources manager. Johanson opened the briefcase and found a manila envelope with Defendant's name on it and a photo of Defendant inside. Johanson also reviewed some of the pictures inside the briefcase. After viewing what she believed to be child pornography, she closed the briefcase and called the police.[3]

¶ 3 Officer Christopher Smith of the West Valley City Police Department responded to the call from Johanson. Upon arrival, Officer Smith was given the briefcase and was told it contained child pornography. Officer Smith opened the briefcase and reviewed approximately one-quarter of the photographs. After viewing the materials in the briefcase, Officer Smith, with the help of C.R. England's satellite tracking system, located and arrested Defendant in his truck, not far from the company's offices. After arresting Defendant, Officer Smith told him they had his briefcase. Defendant acknowledged that the briefcase was his, but claimed it contained only adult pornography. At this point, Officer Smith read Defendant his *Miranda* rights. After the arrest, police conducted a search of Defendant's new truck and discovered additional pornographic materials.

¶ 4 Defendant was charged with ten counts of sexual exploitation of a minor. He was bound over for trial on all ten counts. On April 20, 2003, Defendant moved to suppress all evidence found inside the briefcase, as well as any evidence found during the search incident to his arrest. The trial court denied Defendant's motion. After a two-day trial, Defendant was convicted on all counts. He timely filed this appeal.

## ISSUES AND STANDARDS OF REVIEW[4]

¶ 5 Defendant argues that the trial court erred by ruling that the search of Defendant's briefcase by Officer Smith did not exceed the scope of the private search conducted by C.R. England's employees. "We review the factual findings underlying the trial court's decision to grant or deny a motion to suppress evidence using a clearly erroneous standard." *State v. Veteto*, 2000 UT 62, ¶ 8, 6 P.3d 1133 (quotations and citations omitted). We review "conclusions of law based on these findings for correctness." *Id.*

¶ 6 Defendant also claims that the trial court erred by admitting evidence of adult pornography possessed by Defendant under rule 404(b) of the Utah Rules of Evidence. A trial court's decision to admit evidence of other crimes, wrongs, or bad acts under rule 404(b) will be reviewed under an abuse of discretion standard. *See State v. Decorso*, 1999 UT 57, ¶ 18, 993 P.2d 837.

---

2. While Harris recognized Defendant by face as the truck driver, he did not know his name or any other identifying information. Harris also testified that the latches on the briefcase were already open, and that the briefcase just "flipped up" and open.

3. Johanson testified that when she closed the briefcase, she did not latch the briefcase, or replace the tape, essentially leaving it as she received it.

4. Because of our treatment of this case, it is unnecessary for us to address Defendant's first argument that the trial court erred in concluding that Defendant abandoned his briefcase. We also decline to address Defendant's constitutional challenge to Utah Code section 76–5a–3 because Defendant failed to preserve this issue below and does not argue plain error on appeal. Furthermore, Defendant's few short sentences on this issue are insufficient for us to properly address this question. *See Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14 ("An issue is inadequately briefed when 'the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court.' " (citation omitted)).

## ANALYSIS

### I. Police Search of the Briefcase

¶ 7 Defendant argues that while Officer Smith may have had reasonable suspicion to seize the briefcase, Officer Smith should have obtained a search warrant before opening and examining the contents of the briefcase. We disagree.

¶ 8 This case is factually similar to and governed by *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). In *Jacobsen*, federal agents were called after Federal Express employees discovered what appeared to be cocaine during their examination of a damaged package. *See id.* at 111, 104 S.Ct. 1652. After calling law enforcement, the employees replaced the items in the package, but left the box unsealed. *See id.* When the first federal agent arrived, he saw that one end of the tube inside the package had been split open. He removed four plastic bags, and after testing the substance in the bags, confirmed that it was cocaine. *See id.* at 111–12, 104 S.Ct. 1652.

¶ 9 In upholding the agent's search, the *Jacobsen* Court first reaffirmed that the Fourth Amendment "is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *Id.* at 113, 104 S.Ct. 1652 (citation omitted). Also, the Court held that when the Federal Express employees opened and searched the package, the defendant's expectation of privacy was extinguished as to the contents discovered by the private actors. *See id.* at 115, 120, 104 S.Ct. 1652. Nonetheless, the Court still examined the search by the federal agents because "the Government may not exceed the scope of the private search unless it has the right to make an independent search." *Id.* at 116, 104 S.Ct. 1652. Ultimately, the Court concluded that the agents did not learn anything through their search that "had not previously been learned during the private search" and therefore, the agents did not infringe any legiti-

mate expectation of privacy by searching the package. *Id.* at 120, 104 S.Ct. 1652.

¶ 10 In this case, as in *Jacobsen*, the C.R. England employees were private actors, and by opening the briefcase and viewing the materials inside, Defendant's expectation of privacy in the viewed materials was extinguished. *See id.* at 115, 120, 104 S.Ct. 1652. "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now nonprivate information[.]" *Id.* at 117, 104 S.Ct. 1652. Therefore, we need to examine only whether Officer Smith's search of the briefcase exceeded the scope of the employees' search.

¶ 11 In arguing that Officer Smith exceeded the scope of the employees' search, Defendant attempts to distinguish the facts of this case from those in *Jacobsen*. Defendant first claims that in *Jacobsen*, the package was left open for all to see the contents and therefore, there was no danger that the agents would discover anything new by searching the package. In contrast, Defendant contends that in this case, because the employees did not search through all the materials in the briefcase, and did not leave it open for all to see inside, there was a greater risk that a police search would reveal contents beyond what was discovered in the employees' search. This argument is unpersuasive.

¶ 12 First, the *Jacobsen* Court specifically noted that "[i]t is not entirely clear that the powder was visible to [the agent] before he removed the tube from the box." *Id.* at 118, 104 S.Ct. 1652. Nonetheless, the Court made it clear that, in that case, it was irrelevant whether the contents of the package were visible. The Court stated:

> Even if the white powder was not itself in "plain view" because it was still enclosed in so many containers and covered with papers, there was a virtual certainty that nothing else of significance was in the package and that a manual inspection of the tube and its contents would not tell

him anything more than he already had been told.

*Id.* at 118–19, 104 S.Ct. 1652.

¶ 13 Here, at least three different employees opened and examined the contents of Defendant's briefcase. After concluding that the briefcase contained, among other things, child pornography, they closed the briefcase, but left it unsecured while waiting for police to arrive. Like in *Jacobsen*, there was little chance that the briefcase contained anything else of legal significance besides the illicit pornographic materials.

¶ 14 Defendant's argument that Officer Smith's search exceeded the scope of the employees' search also fails because it is factually unsupported in the record. Based on the testimony at the evidentiary hearing on Defendant's motion, the employees reviewed approximately one-third of the photos and documents in the briefcase, discovering child and adult pornography as well as a photo of Defendant. In contrast, when Officer Smith was asked how far down in the stack of materials he looked, he replied: "I believe I went down through maybe a quarter of—of the stacks, if—if even that far." Officer Smith described seeing what appeared to be child pornography, manila folders with labels or titles describing different types of pornography, and an enlarged photocopy of Defendant's driver license.[5]

¶ 15 It is clear from the record that the scope of the searches was substantially identical. The employees' search as well as Officer Smith's search revealed the same type of content—adult and child pornography. The illicit child pornography materials, viewed by all who opened the briefcase, was the basis of Defendant's charges, not something discovered exclusively during Officer Smith's search.

Furthermore, it is significant that Officer Smith's search was limited to one-quarter or less of the briefcase's contents; whereas the employees' search covered at least one-third of the materials. There is no evidence that Officer Smith discovered any incriminating evidence different than the type already discovered by the C.R. England employees, *see id.* at 120, 104 S.Ct. 1652, and we cannot say that Officer Smith's actions rose to the level of a new independent search by police beyond the scope of the employees' search. Accordingly, we hold that the trial court did not err in concluding that Officer Smith's search did not exceed the scope of the private search conducted by C.R. England's employees, and in denying Defendant's Motion to Suppress.

## II. Evidence Admitted Under Rule 404(b)

¶ 16 Defendant next alleges that the trial court erred by admitting State's exhibits 163 and 164 into evidence at trial.[6] Specifically, Defendant argues that contrary to rule 404(b) of the Utah Rules of Evidence, these photos were in fact offered for a character purpose, and additionally, the prejudicial effect of admitting the photos outweighed any probative value they may have had.

■ ¶ 17 Rule 404(b) of the Utah Rules of Evidence states, in part:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Utah R. Evid. 404(b). When determining whether evidence of other bad acts is admis-

---

5. Defendant argues that because the employees did not testify about seeing a copy of Defendant's driver license, that Officer Smith's discovery of the driver license is evidence that he exceeded the scope of the employee's search. However, because Officer Smith testified that the driver license was "the first thing [he] saw" upon opening the briefcase, it is reasonable to assume that it was also seen by the employees.

6. Exhibits 163 and 164 were photographs taken by Defendant of a girl Defendant said was eighteen years old who was dressed to look like a school girl and according to Defendant, was posing to "look reasonably young."

sible under rule 404(b), the trial court must conduct a three-part test. *See State v. Webster*, 2001 UT App 238, ¶ 31, 32 P.3d 976. It must inquire, " '(1) whether such evidence is being offered for a proper, noncharacter purpose under 404(b), (2) whether such evidence meets the requirements of rule 402, and (3) whether this evidence meets the requirements of rule 403.' " *Id.* (quoting *State v. Decorso*, 1999 UT 57, ¶ 20, 993 P.2d 837 (emphasis omitted)).

¶ 18 It would be improper under rule 404(b) for the State to introduce these photos to show Defendant's general disposition or propensity to view adult pornography. *See Decorso*, 1999 UT 57 at ¶ 21, 993 P.2d 837 (stating that evidence offered only to show the defendant's propensity to commit crime is inadmissible). However, the State argues that these exhibits were introduced not to show Defendant's disposition for viewing adult pornography, but rather, to show Defendant's intent in possessing the child pornography.

¶ 19 At trial, Defendant denied that he possessed the child pornography for any prurient interests. In fact, part of Defendant's defense was that he collected the photographs to later provide them to federal law enforcement authorities. Given this alternative explanation, Defendant's intent in possessing the child pornography was a significant question for the jury to determine. When intent is at issue, evidence of other bad acts which could aid the jury in determining Defendant's intent is proper. *See State v. Ramirez*, 924 P.2d 366, 369 (Utah Ct.App. 1996) (stating that by claiming innocent involvement in drug activity, the defendant placed his intent at issue, and testimony regarding prior drug activity was properly permitted). Given the nature of the photos taken by Defendant depicting an eighteen year old girl dressed to look like a "school girl," and purposefully posed to "look reasonably young," it was proper for the jury to consider Defendant's possession of these photos as evidence of his intent to possess child pornography.

¶ 20 The second part of the rule 404(b) analysis requires that the evidence be relevant under rule 402. Rule 401 of the Utah Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R. Evid. 401. However, "unless the other crimes evidence tends to prove some fact that is material to the crime charged—other than the defendant's propensity to commit crime—it is irrelevant and should be excluded." *Decorso*, 1999 UT 57 at ¶ 22, 993 P.2d 837. In this case, because Defendant admitted possessing the child pornography, his intent was the only contested issue at trial. Therefore, this prior bad acts evidence is relevant pursuant to rule 402.

¶ 21 The final requirement for admissibility under rule 404(b) is that the evidence's probative value outweigh its prejudice to the defendant. *See* Utah R. Evid. 403. Defendant argues that introducing evidence of the legal pornography confused and misled the jury by allowing it to infer that because he possesses adult pornography, he must be guilty of a crime. Defendant also argues that the State's closing statements encouraged the jury to review both the legal and illegal pornography and misled the jury into believing they could convict based on the possession of legal pornography.

¶ 22 "A careful weighing of the relevance and probative value of [this] evidence should be made and a balance struck between the need for its introduction and the prejudicial effect the testimony may have before such evidence is received." *State v. Lenaburg*, 781 P.2d 432, 438 (Utah 1989); *see also Decorso*, 1999 UT 57 at ¶ 29, 993 P.2d 837 (stating that trial court should consider among others, factors such as "the strength of the evidence[,] ... the need for the evidence[,] ... and the degree to which the evidence probably will rouse the jury to overmastering hostility' " (citation omitted)). In this case, Defendant admitted to taking the photos in exhibits 163 and 164. Further, as stated above, the evidence was relevant to

the question of Defendant's intent in possessing the child pornography. Finally, given the fact that the State introduced approximately 150 photographs of child pornography, we do not think there was a risk that these two exhibits would unduly prejudice Defendant. Therefore, because these exhibits were relevant in showing Defendant's intent to possess the child pornography, a proper purpose under rule 404, and because their probative value outweighed their prejudicial effect, the trial court did not err by admitting exhibits 163 and 164 into evidence.

## CONCLUSION

¶ 23 Defendant's expectation of privacy in the briefcase and its contents was lost after various C.R. England employees opened the briefcase, searched the materials inside, and invited law enforcement officers to examine it. Because of his limited examination of the briefcase's contents, Officer Smith's search of the briefcase did not exceed the scope of the employees' search. Additionally, the trial court did not err in admitting exhibits 163 and 164 into evidence. The photographs were admitted to show Defendant's intent in possessing child pornography, were relevant, and were not unduly prejudicial. Accordingly, we affirm the trial court's rulings.

¶ 24 WE CONCUR: JAMES Z. DAVIS and NORMAN H. JACKSON, Judges.